# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Lewis C. Massey

v.

Joseph W. McCullen
and Riley

April 21, 1997

Case No. CL96-167

BY JUDGE WILLIAM H. LEDBETTER, JR.

In a post-verdict motion, the defendant seeks a new trial on the ground that several procedural and evidentiary rulings were erroneous and because the jury award was excessive.

*Background Facts*

This case arises out of a motor vehicle accident that occurred on Route 208 near Lake Anna in Spotsylvania County on April 29, 1994. Massey's pick-up truck was struck from the rear by a tractor-trailer driven by McCullen while in the employ of Riley.

At the time of the collision, Massey was making a left turn from Route 208 onto Route 602, a secondary road that intersects with Route 208. According to the evidence, Massey gave a proper signal before beginning the turn. McCullen, apparently attempting to pass Massey despite the intersection and the double yellow line leading up to it, hit Massey's pick-up in the rear on the driver's side causing it to flip in mid-air and land on its roof on the roadway. Massey suffered significant injuries.

This action was instituted against McCullen and Riley. In their pleadings, the defendants admitted that McCullen was an employee of Riley acting pursuant to and within the scope of his employment at the time of the accident.

The parties engaged in discovery. At the July 1996 Term Day, the case was fixed for trial with jury on March 24, 1997.

Shortly before trial, the defendants filed an assortment of motions. Pertinent to this decision, they were as follows.

On March 3, 1997, the defendant asked the court to rule that McCullen was incapable of testifying under Virginia Code § 8.01-397 so that various out-of-court statements previously made by McCullen would be admissible at trial. After an evidentiary hearing on March 17, 1997, the court determined that McCullen would be entitled to the protections and benefits of § 8.01-397 because he was incapable of testifying. Counsel for the defendants conceded that he had known of McCullen's incapacity for quite some time and that he had not shared with plaintiff's counsel McCullen's previous declarations that were the subject of the motion. The court instructed counsel to review the out-of-court statements together, promptly, and if any of them were objectionable on grounds other than their admissibility under § 8.01-397, the court would revisit the matter on the day of trial at 9:00 a.m.

On March 5, 1997, the defendants requested for the first time that Massey be ordered to submit to a physical examination pursuant to Rule 4:10(a). The court granted the motion in a hearing conducted by conference call on March 7, 1997. Massey was examined three days later by a physician selected by the defendants.

On March 21, 1997, the defendant sought to exclude any reference at trial to McCullen's attempts to pass Massey improperly prior to the collision. At a hearing on the morning of trial, the court denied the motion.

On the day of trial, Massey informed the court that he would suffer a nonsuit against McCullen and proceed to trial against Riley only. Since Massey was entitled to nonsuit, Virginia Code § 8.01-380, the motion was granted and the action was dismissed as to McCullen. Riley then requested a ruling that McCullen's out-of-court declarations still could be admitted as evidence in the trial under § 8.01-397. The court ruled that the statutory provisions would not apply to an action solely against Riley.

Riley then requested a continuance, claiming prejudicial surprise. The court denied the motion and proceeded with the trial.

At the conclusion of the case, the court granted summary judgment for Massey on the issue of liability. (Riley had conceded that he would be vicariously liable under the doctrine of respondeat superior if the accident was proximately caused by McCullen. The evidence was clear and uncontradicted

that the negligence of McCullen was the sole proximate cause of the collision and Massey's injuries.)

The jury deliberated the issue of damages and eventually returned a verdict in the amount of $194,115.96. The court received the jury verdict but did not enter judgment pending receipt and review of memoranda on Riley's motion for a new trial.

### Applicability of Section 8.01-397

At common law, where one party to a transaction was incapable of testifying due to death, insanity, or other legal cause, the opposing party was incompetent to testify about the transaction. The so-called dead man's statute was enacted to change that rule. Today, a party is not incompetent to testify merely because the other party is dead or otherwise incapable of testifying. However, Virginia Code § 8.01-397 imposes several safeguards.

The first safeguard is that no judgment will be awarded to the testifying party based upon his or her uncorroborated testimony. That aspect of the statute is not called into question here because Massey presented witnesses who corroborated his testimony, and Riley does not contest that.

The second safeguard is the one implicated in this case. It provides that "all entries, memoranda and declarations by the party ... incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence ...." Although the court has not been favored with a copy of the "declarations" supposedly made by McCullen before he became incapacitated with Alzheimer's disease, it appears from arguments of counsel that they include a statement made by McCullen to his insurer's claims representative and perhaps a statement made to the police officer who investigated the accident. (As noted above, the court determined on March 17th that McCullen was incapable of testifying and that the statutory benefits and protections would apply at trial, subject to the court's ruling on the particulars of any specifically contested "declaration" on the day of trial.)

The dead man's statute applies only in an action involving a party incapable of testifying or his *committee, trustee, executor, administrator, heir, or other representative*. When Massey nonsuited McCullen, the action was no longer "against a person ... incapable of testifying." Riley contends, however, that the statute still applies because Riley was a "representative" of McCullen.

The purpose of the dead man's statute is to prevent a surviving party from prevailing against an incapacitated party by relying on his own unsupported credibility while his opponent, who alone might have contradicted him, is silenced by death or incapacity. *See Hereford v. Paytes*, 226 Va. 604 (1984).

The protection is intended to benefit the incapacitated party or, if he is dead, his estate and heirs. Riley can cite no authority for the proposition that the statute is designed to benefit others, such as an employer or former employer, simply because the incapacitated person's prior out-of-court declarations would be useful to the employer and he is now hampered in litigation because the employee who made those declarations can no longer testify.

Clearly, an employer is not a "representative" of a present or former employee in the ordinary sense of the word; nor is he a "representative" as that word is used in § 8.01-397.

Therefore, once McCullen was no longer a party in the case, the dead man's statute did not apply. Riley could not claim its benefits as an employer or former employer of McCullen.

*Continuance Denial*

Riley complains that when McCullen was nonsuited and the court ruled that Riley could not use McCullen's declarations as evidence, he was entitled to a continuance. At the time, the court inquired of counsel for Riley whether there was any reasonable likelihood that he could ascertain other evidence that would aid Riley. With candor, counsel responded that he knew of none. Riley observes now that a continuance would have allowed him to file a third party motion for judgment against McCullen for contribution that "would have brought [McCullen] back into the case as a party and possibly allowed his prior statements into evidence ...." The argument is without merit, coming as it did on the day of trial. As Massey points out, Riley could have afforded himself the same opportunity by filing a cross-claim earlier in the litigation.

Further, it should be noted that Riley brought on this last-minute maneuvering by his failure to disclose McCullen's incapacity and McCullen's prior declarations until just days before trial. The trial date had been fixed for eight months. The defense has conceded that it knew of McCullen's incapacity. Therefore, there was no good cause on March 24th for the court to send the jury venire home so that Riley could respond to Massey's counter-maneuver (the nonsuit) by performing yet another one (a third party motion for judgment for contribution against McCullen).

The court did not err in denying the continuance under the circumstances of this case, especially in view of how and when these issues first came to the court's attention.

*Testimony of Dr. John S. Moss*

Riley contends that Massey's treating physician, Dr. John S. Moss, an orthopedic surgeon, gave testimony at trial about the extent and duration of Massey's injuries that were different from the opinion that had been identified in responses to interrogatories.

This court adheres to the general proposition, even when there is no pretrial scheduling order, that a party to a personal injury action should not be permitted to present at trial an expert's opinion that is so materially different from that which was disclosed during discovery as to be tantamount to deception or entrapment, albeit inadvertently done, thereby creating an unfair disadvantage to the opposing party. The proper inquiry is not whether the nondisclosure was deliberate. Instead, the court focuses on the materiality of the difference between what the expert intends to say at trial and what the opposing party was told he would say or what the opposing party, exercising due diligence, should expect him to say.

Reviewing Dr. Moss's medical records and reports supplied to the defense during discovery, it is apparent that there is no significant, prejudicial difference between what was said in those papers and what Dr. Moss opined at trial. Everyone knew or should have known that Massey's disc problems would be an issue at trial, that Massey would claim permanent disability as a result of the problems, and that Massey would contend that all present symptoms are the result of the accident rather than a pre-existing condition. (At Riley's request, the court gave the jury an instruction on aggravation of a pre-existing condition.)

For these reasons, the court did not err when it refused to exclude Dr. Moss's prognosis and other medical opinions.

*Testimony About Crossing Double Yellow Line*

The court permitted Massey and an independent witness, Delilah Shackelford, to testify that within a half mile of the collision, McCullen had once before attempted to pass Massey improperly. Riley claims that it was error to allow this testimony because it was evidence of a "prior bad act," similar to prior accidents and prior criminal conduct, normally excluded in Virginia.

To the contrary, the court is of the opinion, as it was at trial, that McCullen's pattern of driving behavior during the approximately one-half mile he was behind Massey on Route 208 was admissible to show conditions and circumstances leading up to and surrounding the accident which shed light on

the lack of care exercised at the time of the accident. According to the evidence, McCullen pulled up immediately behind Massey as the two vehicles were travelling west on Route 208, at about 45 m.p.h., and attempted to pass him in a "no passing" zone. When that proved unsuccessful, McCullen "tailgated" Massey until he once again tried to pass at the Route 602 intersection, causing the collision when he failed to notice that Massey was turning left onto Route 602. Nothing about this continuous chain of events, occurring over a very short distance and within a short period of time, constitutes a "prior" act irrelevant to the issue of liability which, until the court granted summary judgment for Massey on that issue, was an issue to be decided by the jury.

### Excessive Verdict

If the author of this opinion had been a member of the jury panel, he probably would not have voted for a verdict of $194,115.96. That irrelevant observation aside, the court is of the opinion that it should not set the verdict aside and grant a new trial on the ground that the verdict is excessive.

An order setting aside a jury verdict is a drastic remedy. If there is any credible evidence that supports the verdict, it should be upheld unless it shocks the conscience and creates the impression that the jury was motivated by passion, corruption, or prejudice or that it misconceived or misconstrued the facts or the law. *Rutherford v. Zearfoss*, 221 Va. 685 (1980). In considering such a motion, the court does not weigh the evidence. Instead, the court determines as a matter of law whether the jury could have reached its verdict after a fair and reasonable consideration of the evidence and instructions.

As this judge wrote in another case involving permanent injuries:

> A trial judge has the authority and duty to correct a verdict that is so excessive as to shock the conscience or to compel the conclusion that the verdict or the size of it was the product of passion or prejudice or some other misunderstanding of the facts or the law. However, a trial judge should not arbitrarily substitute his opinion of proper damages for that of the jury. Where the damages award is supported by some logical interpretation of the evidence as to damages, the verdict should not be disturbed. [Citations omitted.] *Galson v. Brown*, 34 Va. Cir. 329 (1994).

In this case, the real damages issue is the monetary value of Massey's permanent impairment. That question, as most questions involving the quantum of damages to which a plaintiff is entitled for a permanent injury, is

for the jury. The jury heard Massey. The jury heard evidence about how his life has been substantially altered as the result of his injuries. The jury heard the medical evidence regarding the consequences of the injuries. The jury learned from the evidence that prior to the accident, he was robust and vigorous, while after the accident, he has suffered considerable pain and discomfort and has had to curtail almost all of the enjoyable activities that he had previously pursued in retirement. Despite the relatively short life expectancy because of his age and the lack of lost income because he was retired, the jury reasonably could have determined that a life-style-altering event such as this accident justified a sizeable award. In essence, his injuries have denied Massey the enjoyment of his "golden years" with the fullness, vitality, and exuberance that he displayed before the accident. Under these circumstances, the size of the verdict does not shock the conscience of the court.

Further, nothing about the verdict indicates that the jury was motivated by passion or prejudice. As Riley himself noted in his post-verdict memorandum, the jury deliberated the issue of damages for almost three hours. At one point, the jury returned to the courtroom to seek guidance about ascertaining the value of the intangible elements of damages. From these circumstances, it appears that the jury was conscientiously seeking a fair and proper result, not acting arbitrarily out of feelings of passion or prejudice.

Therefore, the motion must be denied.

### Conclusion

Riley's motion to set aside the verdict and grant a new trial will be denied for the reasons stated. Similarly, the request for remittitur under Virginia Code § 8.01-383.1 will be denied.